Cynthia DAVIS–JOHNSON (on behalf
of son Ryan B. DAVIS),
Appellant,

v.

Charles W. PARMELEE, III, Appellee.

No. 1998–CA–000644–DG.

Court of Appeals of Kentucky.

Aug. 27, 1999.

As Modified Oct. 1, 1999.

Discretionary Review Denied by
Court of Appeals June 7, 2000.

**348**

Rocco J. Celebrezze, Jeffery L. Parrish, Louisville, for Appellant.

Joseph Michael Kelly, Louisville, for Appellee.

Before: COMBS, KNOX, and MILLER, Judges.

## OPINION

KNOX, Judge:

This Court accepted discretionary review of the decision of the Jefferson Circuit Court affirming the Jefferson Family Court's dismissal of a paternity action Cynthia Davis–Johnson (Cynthia) instituted on behalf of her minor son, Ryan Davis, for want of personal jurisdiction over appellee, Charles Parmelee, III. Having reviewed the record, applicable law and briefs of counsel, we reverse and remand.

The record discloses that both Cynthia and appellee were domiciled in Kentucky throughout some period of 1983, during which time, Cynthia alleges, the parties' relationship resulted in the conception and subsequent birth of a child.[1] Apparently, appellee departed Kentucky on or about June 1, 1983. Cynthia remained within the state and gave birth to a child on December 14, 1983, in Louisville, Kentucky. At some undisclosed time following the child's birth, she removed herself and the child from this Commonwealth.

On December 18, 1995, Cynthia, now a Michigan resident, filed a complaint in the Jefferson Family Court seeking to adjudicate the paternity of her son. The complaint alleged, *inter alia*, that appellee, now a resident of Texas, was the putative father. The complaint was filed pursuant to KRS 406.021(1), the Uniform Act on Paternity, and further cited KRS 454.210(2)(a)(8)(a) and (b)[2] as the basis for the court's exercise of long-arm personal jurisdiction over appellee.

Notice of the filiation action was served upon appellee in accordance with KRS 454.210(3); however, process was returned to the Secretary of State with a notation on the envelope providing the appellee's forwarding address. The returned envelope, containing the pleadings, was then filed of record.

Subsequently, in March 1996, Cynthia moved for a default judgment of paternity, giving appellee notice of the hearing thereon to appear on April 1, 1996 at 12:00 noon. Notice was again sent to an inaccurate address; however, in that it was not mailed "restricted delivery," the notice was delivered to the forwarding address in the normal course of business. Upon receipt of same, appellee contacted his attorney who, upon arriving for the hearing, discovered it had been moved to the 8:30 a.m. paternity docket, during which an order granting the default judgment was entered. Ultimately, the default judgment was set aside and appellee filed a CR 12 motion to dismiss, alleging, *inter alia*, lack of personal jurisdiction.

---

1. Appellee has never denied that he, in fact: (1) engaged in sexual relations with Cynthia in 1983; (2) was domiciled in Kentucky during this period of time; nor (3) that he is the biological father of Cynthia's son.

2. KRS 454.210 provides, in pertinent part:
 (2)(a) A court may exercise personal jurisdiction over a person who acts directly ... as to a claim arising from the person's:

 . . . .
 8. Committing sexual intercourse in this state which intercourse causes the birth of a child when:
 a. The father or mother or both are domiciled in this state;
 b. There is a repeated pattern of intercourse between the father and mother in this state[.]

The Jefferson Family Court entertained appellee's argument that the court did not have personal jurisdiction over a Texas resident. Appellee argued that KRS 454.220,[3] governing actions for support, as opposed to KRS 454.210, controlled since an action under the Uniform Paternity Act provides for a determination of the proper amount of support upon establishing paternity. He further contended, pursuant to KRS 454.220, an action must be brought within one year of the nonresident's departure from the state. Lastly, appellee argued the rules of statutory construction required application of KRS 454.220 as it is a "later enacted, more specific statute." The family court dismissed the action.

In subsequent motions to reconsider and on appeal to the circuit court, Cynthia briefed the issues and requested the court consider the scope of jurisdiction provided by KRS 454.210. Ultimately, on October 8, 1997, the circuit court entered its opinion and order affirming the Jefferson Family Court's dismissal of the action. We accepted discretionary review.

■ Here, Cynthia argues the Jefferson Family Court erred in dismissing her cause of action for want of jurisdiction pursuant to the one (1) year statute of limitations provision contained in KRS 454.220. She contends KRS 454.210(2)(a)(8) is the operative long-arm statute authorizing the court to ·exercise jurisdiction over a non-resident putative father for the purposes of establishing paternity and support.

Conversely, appellee posits the Jefferson Family Court and the circuit court correctly applied KRS 454.220 in declining to exercise jurisdiction over the matter. He specifically relies upon language originally stated in *Sumner v. Roark*, Ky.App., 836

S.W.2d 434 (1992), wherein this Court commented:

> The paternity action gives the mother, child, person or agency substantially contributing to the support of the child a remedy to compel support for the illegitimate child. This is a support statute, not a custody statute, and if the parties do not agree to custody or visitation in the paternity action, it must be resolved in circuit court.

*Sumner*, 836 S.W.2d at 438. (Citation omitted).

By virtue of the above-quoted language, appellee successfully persuaded both the Jefferson Family and Circuit Courts that filiation actions are "support" actions, hence governed by KRS 454.220. We are not so persuaded.

A reading of *Sumner* reveals the Court's opinion was rendered in the context of a custody dispute. Apparently, appellants therein argued the Jefferson Family Court was without jurisdiction to determine paternity when, in actuality, there was never a question of paternity before the court. As this Court observed:

> Even though the appellants tried to manipulate the different courts, they were unsuccessful because the courts involved realized that even though the Uniform Paternity Act (KRS 406.021) vests district court with exclusive jurisdiction to determine paternity, circuit court is vested with exclusive jurisdiction to determine custody matters (KRS 403.280). These statutes are not conflicting, but address different needs.

*Sumner*, 836 S.W.2d at 437–38. The Court continued by describing the nature of the differing "needs" addressed by the two (2) statutes as the language seized upon by appellee delineates.

---

**3.** KRS 454.220 provides, in pertinent part:
 A court in any matrimonial action or family court proceeding involving a demand for support ... may exercise personal jurisdiction over the respondent or defendant notwithstanding the fact that he or she no longer is a resident or domiciliary of this state ... if the ... claim for support ... accrued under the laws of this state. The action shall be filed within one (1) year of the date the respondent or defendant became a nonresident of, or moved his domicile from, this state.

We do not believe this Court intended, either explicitly or implicitly, to designate filiation suits as solely "support" actions. Rather, the Court was merely distinguishing the nature of the paternity statute from that of the custody statute for purposes of assessing jurisdiction between district and circuit court. *See also Basham v. Wilkins,* Ky.App., 851 S.W.2d 491, 493 (1993)("district court does not have jurisdiction to make a custody determination in a paternity action. A paternity action is for support, while visitation and custody disputes must be resolved in circuit court." (Citing, *inter alia, Sumner v. Roark,* Ky. App., 836 S.W.2d 434 (1992))).[4]

In other words, paternity actions are independent proceedings which may result in a remedy of support. However, aside from support, there exist additional motivations behind, and available remedies arising from, a paternity suit. For example, the right to inherit from either the putative father or the out-of-wedlock child, as the case may be, arises once paternity has been established. *Ellis v. Ellis,* Ky., 752 S.W.2d 781 (1988). More significantly, children born out of wedlock retain all of the same rights as those born in wedlock, as they are entitled to the guarantees afforded under the Equal Protection Clause of the 14th Amendment to the United States Constitution. *Alexander v. Commonwealth,* Ky.App., 708 S.W.2d 102 (1986).

In *Alexander* this Court declared KRS 406.031, which at the time provided a four-year statute of limitations in paternity actions, unconstitutional as it failed to comport with federally grounded constitutional guarantees. This Court adopted the opinion of the lower court which provided, in part:

> In our changing society, the number of children being born out of wedlock is growing at an alarming rate. These children are entitled to the same right of support and sustenance from their fathers as are the children born in wedlock, and this right cannot be diminished by the argument that with the passage of time the putative father may be unable to properly defend himself. This is particularly so with the advance of science to the point where blood tests at the present time can establish paternity with an accuracy up to 99.4%. This Court recognizes that difficulties of proof are valid and important considerations, and it is not the intent of the Court to belittle these considerations, but the Court feels that these arguments do not rise to the level where the possible difficulties of proof would overcome the concrete human rights of illegitimate children as guaranteed by the Equal Protection Clause.

*Alexander,* 708 S.W.2d at 103–04.

Unquestionably, KRS 454.220 requires a party seeking support from a non-resident to bring the cause of action within one (1) year of the date respondent/defendant departed the state. Failure to comply with this statute of limitations divests the court of authority to exercise personal jurisdiction over the purported obligor. Application of KRS 454.220 to filiation cases would necessarily create a class of children against whom a one (1) year statute of limitations would operate, i.e. those whose putative parent departed the state in excess of one (1) year prior to the paternity suit being filed. Accordingly, were appellee's interpretation of *Sumner* correct, i.e. a filiation suit is strictly a "support" action, the net effect would be to render KRS 454.220, as applied to paternity matters, unconstitutional. *See Alexander,* 708 S.W.2d at 103.

We do not believe the legislature intended to usurp the revised version of KRS

---

4. We note the 1996 amendments to KRS 406.051(2), which are totally inapplicable to this case, permit the district court to exercise jurisdiction, concurrently with the circuit court, over matters of child custody and visitation where paternity has been established under KRS Chapter 406.

406.031 [5] which provides an eighteen (18) year statute of limitations for filing a paternity action under KRS 406.021 through the enactment of KRS 454.220.[6] Rather, it is our opinion the legislative intent remains that KRS 454.210(2)(a)(8) controls the exercise of long-arm jurisdiction respecting paternity matters.

In its opinion and order the circuit court correctly concluded:

> A court adjudicating paternity must have personal jurisdiction over the defendant. OAG 77–229 (Paternity judgment is a personal action; defendant must be served under CR 4.04 or enter a voluntary appearance). KRS 454.210(2)(a)[ (]8[) ] provides for personal jurisdiction over some nonresidents. A nonresident may be subject to a paternity action in Kentucky if two conditions are met. First, the child must have been conceived in Kentucky. Second, the act of intercourse causing conception must meet one of three subconditions: (1) it must have occurred while either party was a Kentucky domiciliary; (2) there must have been a repeated pattern of intercourse between the parties in Kentucky; or (3) the intercourse must have been a tort or crime. Graham & Keller, *Kentucky Domestic Relations Law*, at T23.03, p. 447.[7]

Kentucky's long-arm statute, however, only permits Kentucky to base paternity on the respondent's sexual activity within the state. In two kinds of cases, KRS 454.210 provides no grounds for the assertion of long-arm jurisdiction when the child has been conceived outside Kentucky, or when paternity has been established but a support obligation is missing or inadequate under Kentucky's rules.

■ We are perplexed as to the reason the lower court identified the two (2) instances in which KRS 454.210 does not confer jurisdiction, as neither is applicable to the case sub judice (the child was conceived in Kentucky and there has not been a determination of paternity, hence neither a missing nor inadequate support order). Rather, under the facts of this case, Cynthia's filiation action fits squarely within the terms and conditions contained in KRS 454.210(2)(a)(8). For the purpose of the court's determination of the personal jurisdiction question, appellee conceded as true the allegations set forth in Cynthia's complaint. Therefore, it is undisputed that at the time of the child's conception, Cynthia and appellee were co-habitating/engaging in sexual relations within this Commonwealth. As such, appellee engaged in sexual intercourse which caused the birth of a child during the period of time both he and Cynthia were domiciled in Kentucky.[8] These facts authorize a Kentucky court to extend the long-arm of the law and hale an

---

5. In response to the *Alexander* decision, KRS 406.031 was revised in 1986 to provide an eighteen (18) year statute of limitations for the determination of paternity.

6. KRS 454.220 was enacted in 1992.

7. We note the current version of Graham & Keller on domestic relations law in Kentucky provides:

> A Kentucky court may determine paternity if it has jurisdiction under KRS 454.210(2)(a)(8).... In addition, KRS 454.220 may also permit paternity determinations, although that statute's language is less clear. The general long-arm statute, KRS 454.210(2)(a)(8), permits this state to determine paternity if the parties had sexual intercourse in this state and either was a Kentucky domiciliary, or there was a re-

peated pattern of sexual intercourse in this state, or the sexual intercourse in this state was a tort or a crime.

Louise E. Graham & James E. Keller, 15 Kentucky Practice, Domestic Relations Law § 14.63 (2nd ed.1997).

8. Since both parties were domiciled in Kentucky during the period of the child's conception, KRS 454.210(2)(a)(8)(a) is sufficient to trigger application of the long-arm statute. We decline to address application of KRS 454.210(2)(a)(8)(b) as appellee has conceded to the nature of his relationship with Cynthia during the course of their co-habitation and any discussion, with regard thereto, would be superfluous as subsection (a) provides an adequate ground upon which the court may act.

alleged putative father into this jurisdiction for an adjudication of paternity.[9]

 We are mindful that while Kentucky's long-arm statute is designed to allow the exercise of personal jurisdiction over nonresident defendants, such action must still comport with federal constitutional requirements of due process. We further recognize that KRS 454.210 permits the courts "to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants." *Friction Materials Co., Inc. v. Stinson,* Ky.App., 833 S.W.2d 388, 390 (1992) (quoting *Mohler v. Dorado Wings, Inc.,* Ky.App., 675 S.W.2d 404, 405 (1984)). The determination of the outer limits of personal jurisdiction turns on application of a three (3) part test, to wit:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Stinson,* 833 S.W.2d at 390. (Quoting *Southern Machine Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968)). *See also Perry v. Central Bank & Trust Co.,* Ky.App., 812 S.W.2d 166, 168 (1991).

 We believe the test for due process is easily satisfied. Undeniably, appellee purposefully conducted himself within this state such as to result in the conception of a child. The matter sub judice is the direct result of the child's conception and subsequent birth in this Commonwealth.

Finally, Kentucky's exercise of jurisdiction is reasonable in that our laws specifically contemplate that a non-resident putative parent be held answerable where the product of a party's conduct in this state is a child whose legal status is in dispute. It matters not that one or both of the parties no longer reside within our borders. The child, who is at the heart of this matter, is entitled to an adjudication of his biological parentage where the parties engaged in the enunciated statutory conduct and such conduct resulted in the child's conception and birth within this Commonwealth.

Although we believe KRS 454.210(2)(a)(8) amply confers personal jurisdiction regarding a filiation action, it is our opinion, under the specific facts of this case, that paternity, absent support, is all the statute permits to be adjudicated. Should paternity be affirmatively established, then Cynthia is entitled to move the court for an award of support. However, this action would be governed by KRS 454.220 as it is undeniably a "family court proceeding involving a demand for support ... [and] shall be filed within one (1) year of the date the respondent or defendant became a nonresident of, or moved his domicile from, this state." KRS 454.220. As Cynthia failed to meet the requisite statute of limitations, she is foreclosed from pursuing a claim for support in Kentucky's courts. In this vein, should Cynthia prevail in the filiation matter, we believe she can readily pursue a support action in another forum vis à vis the Uniform Interstate Family Support Act.

In accordance with the foregoing, the decision of the Jefferson Circuit Court is reversed and remanded with instructions to enter an order permitting the exercise of personal jurisdiction over appellee for

---

**9.** On appeal, appellee further argues there is no proper venue as KRS 406.151 provides, "An action under this chapter may be brought in the county where the alleged father is present or has property or in the county where the mother resides." However, KRS 454.210(4) directs that "[w]hen the exercise of personal jurisdiction is authorized by this section, any action or suit may be brought in the county wherein the plaintiff resides or where the cause of action or any part thereof arose." Since jurisdiction is conveyed through KRS 454.210, appellee's argument is without merit. Rather, in accordance with the statute, Jefferson County is the proper venue for this matter.

the sole purpose of conducting a paternity determination. Personal jurisdiction is authorized pursuant to KRS 454.210(2)(a)(8)(a) or (b).

ALL CONCUR.